IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| SHAKIL RAHMAN, | * |
| Plaintiff, | * |
| v. | * |
| VYLLA TITLE, LLC, ET AL., | *   Civil No. 24-1282-BAH |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Shakil Rahman brought suit against Vylla Title, LLC ("Vylla Title"), Kofi Larbie Boateng, and Comfort Akwaaba Boateng (Kofi and Comfort Boateng are collectively referred to as the "Boatengs") alleging numerous causes of action stemming from the purchase of a home in Bowie, Maryland. *See* ECF 15 (amended complaint). Pending before the Court are Vylla Title's motion to dismiss the amended complaint, ECF 22, including a memorandum of law, ECF 22-2, and eleven exhibits, ECFs 22-3 through 22-13.[1] The Boatengs, proceeding pro se, have filed their own motion entitled "Response in Compliance with the Order at ECF [] 21 [and] Motion to Dismiss."[2] *See* ECF 24. Plaintiff filed an opposition to each motion. *See* ECF 25 (opposing the Boatengs' motion); ECF 29 (opposing Vylla Title's motion). Vylla Title filed a reply. *See* ECF

---

[1] Exhibits attached to the motion to dismiss include: ECF 22-3 (trustee's deed), ECF 22-4 (first false deed), ECF 22-5 (second false deed), ECF 22-6 (purchase agreement), ECF 22-7 (auction addendum to residential purchase agreement), ECF 22-8 (title company disclosures), ECF 22-9 (email from Vylla Title), ECF 22-10 (commitment for title insurance), ECF 22-11 (special warranty deed), ECF 22-12 (third false deed), and ECF 22-13 (eviction action docket report).

[2] ECF 21 is the Court's order extending the time for the Boatengs to respond to the amended complaint.

30. The Court has reviewed all relevant filings and finds that no hearing is necessary.[3] *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, Defendant Vylla Title's motion is **GRANTED** and the Boatengs' motion is **DENIED**.

## I.   BACKGROUND

In October 2005, the Boatengs purchased a property at 12600 Nichols Promise Drive, Bowie, Maryland 20720 (the "Property"). ECF 15, at 2 ¶¶ 6–7. The Boatengs then refinanced the mortgage in 2006 and subsequently defaulted. *Id.* at 3 ¶¶ 8–9. In 2016, foreclosure proceedings were initiated on the Property, and on September 11, 2018, the Property was purchased at foreclosure auction by Deutsche Bank National Trust Company ("Deutsche Bank") as Trustee on behalf of HSI Asset Securitization Corporation Trust 2006-HE2 ("Deutsche Bank/HSI Trust"). *Id.* ¶¶ 9–10. Deutsche Bank became sole owner of the property on October 28, 2019. *Id.* ¶ 12.

The amended complaint alleges that despite the sale of the Property to Deutsche Bank/HSI Trust, the Boatengs apparently did not vacate the premises. Instead, they sought to prolong their tenancy by engaging in a series of illegitimate acts including the filing of multiple fabricated deeds in order to complicate the transfer of title to the Property. *Id.* at 4 ¶ 14, at 8 ¶ 35. First, in 2020, the Boatengs filed a Trust Certificate with the Maryland Department of Assessments and Taxation for a trust titled: "HSI ASSET SECURITIZATION CORPORATION TRUST 2006-HE2" (the "Boateng HSI Trust"), which mimicked the name of the entity that lawfully purchased the Property at auction. *Id.* at 4 ¶ 15; ECF 24, at 3 ¶ 14. The amended complaint alleges that the Boatengs then established multiple fraudulent business organizations, including Kophco, LLC, on November 24, 2020, and Hope Living, LLC, on March 30, 2021, and purported to convey the Property from the Boateng HSI Trust to Kophco, LLC (December 16, 2020), and then from Kophco, LLC, to Hope

---

[3] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

Living, LLC (May 24, 2021), all while legal title was actually held by Deutsche Bank and the real HSI Trust. ECF 15, at 4 ¶¶ 17–20.

Plaintiff entered a contract with Deutsche Bank/HSI Trust to purchase the Property on August 18, 2021, using the services of Vylla Title as escrow, settlement, and title insurance agent. *Id.* at 5 ¶¶ 21, 23. Plaintiff alleges that Vylla Title, through its research, learned of the various deeds related to the Property, and noted as much in its "Title Commitment" by referencing a possible title issue related to Kophco, LLC. *Id.* at 5–6 ¶ 24 ("If title is to be offered other than by record owner, we must determine what has happened to the interest of Hope Living LLC and require that said interest be accounted for by appropriate action and instruments placed of record in Prince George[']s County, Maryland."). Regardless, Plaintiff alleges he remained "unaware of the title issues created by the Boatengs and their entities[.]" *Id.* at 6 ¶ 25. Plaintiff also claims that his realtor explicitly asked a representative of Vylla Title whether "title [was] otherwise acceptable" and was told that apart from some alleged code violations, Plaintiff's file was "clear . . . for closing." *Id.* at 7 ¶¶ 30–31.

On August 19, 2021, Deutsche Bank/HSI Trust signed a Special Warranty Deed transferring title of the Property in fee simple to Plaintiff. *Id.* at 6 ¶ 26. After additional back and forth between Plaintiff's realtor and Defendant, *id.* at 6–7 ¶¶ 27–31, Plaintiff closed on the purchase of the Property on September 10, 2021, *id.* at 7 ¶ 33. The amended complaint alleges that Vylla Title continued to hold Plaintiff's Special Warranty Deed in escrow for almost a year and, despite Plaintiff's "understanding" to the contrary, Vylla Title did not timely record the deed with the appropriate officials in Prince George's County, Maryland. *Id.* at 7–8 ¶¶ 34, 37.

After Plaintiff purchased the Property, the Boatengs continued to refuse to vacate the premises despite Plaintiff's requests. *Id.* at 8 ¶ 35. The amended complaint alleges that the

Boatengs then filed another fraudulent deed in April of 2022, purporting to convey the Property from Hope Living, LLC, to Kofi Boateng, Comfort Boateng, and Kamal Mustafa. *Id.* ¶ 36. Plaintiff alleges that "in August 2022 . . . it came to [his] attention that the Boatengs had filed fraudulent deeds relating to the Property[.]" *Id.* ¶ 37. At the same time, "August 2022," Plaintiff alleges that it "came to [his] attention" his own deed was not yet recorded as "Vylla Title still held [Plaintiff's] fully executed deed in escrow." *Id.* Plaintiff asserts that he "reasonably believed that he had no standing to file [a] [w]rongful [d]etainer [action] to obtain possession, because deed was still not on record." *Id.* ¶ 38. Plaintiff alleges that he "specifically requested" that Vylla Title record his deed, which Vylla Title allegedly did "in the Land Records of Prince George's County on or about August 25, 2022." *Id.* ¶¶ 37, 39.

State tax records ultimately reflected Plaintiff as the record owner of the Property in "March 2023," and Plaintiff filed a wrongful detainer action in the District Court for Prince George's County, Maryland, *see* Case No. D-05-CV-23-014769, on March 23, 2023, and, later, a quiet title action against the Boatengs and their entities in this Court, *see* Civ. No. 23-2400-BAH. *Id.* at 9 ¶¶ 40–41.

Plaintiff's amended complaint raises claims against both Vylla Title and the Boatengs. As to Vylla Title, Plaintiff takes issue with the alleged failure to alert him to the issues with the title and the subsequent failure to record his deed. He alleges breach of contract (Count 1), promissory estoppel (Count 2), and negligent misrepresentation (Count 3). *Id.* at 10–14 ¶¶ 46–62. As to the Boatengs, Plaintiff alleges civil fraud (Count 5), unjust enrichment (Count 7), tortious interference

with prospective economic advantage (Count 8), trespass (Count 9), and malicious use of process (also Count 9).[4] *Id.* at 14–21 ¶¶ 63–103.

## II. LEGAL STANDARD

Vylla Title moves to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(1) on the ground that Plaintiff has failed to plead sufficient facts to demonstrate a concrete injury fairly traceable to some alleged conduct by Vylla Title, *see* ECF 22-2, at 14–21, or, in the alternative, under Rule 12(b)(6) because the claims are insufficiently pled, *id.* at 21–31. The basis for the Boatengs' motion is difficult to decipher but appears to allege that the sale of the Property to Plaintiff was unlawful because "[t]he HIS Trust [*sic*] was assigned a dead loan" and makes additional claims against Nationstar Mortgage, LLC, an entity that is not a party to this case. *See* ECF 24, at 4–5. The Boatengs also assert that their motion is made pursuant to "Fed. R. Civ. P.12(b)(1) and 12(b)(6)."[5] *Id.* at 1.

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint for a lack of subject matter jurisdiction. The plaintiff, as the party invoking a district court's jurisdiction, bears the burden of demonstrating the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008). The Court must have subject matter jurisdiction either based on diversity of citizenship or a federal question. 28 U.S.C. §§ 1331, 1332(a)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Federal courts "have an independent

---

[4] Plaintiff's amended complaint appears to have erroneously left out count numbers 4 and 6 and listed both the trespass and malicious use of process claims as "Count 9."

[5] Although the Boatengs titled their motion to dismiss as pursuant to Rules 12(b)(1) and 12(b)(6), the text of the motion itself does not mention or discuss these rules.

5

obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).

Rule 12(b)(1) also governs motions to dismiss for mootness and for lack of standing, which relate to subject matter jurisdiction. *Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019); *see also Pruitt v. Resurgent Cap. Servs., LP*, 610 F. Supp. 3d 775, 779 (D. Md. 2022) (explaining that motions to dismiss for lack of standing are considered under Rule 12(b)(1)). "Article III gives federal courts jurisdiction only over 'cases and controversies,' U.S. Const. art. III, § 2, cl. 1, and the doctrine of standing identifies disputes appropriate for judicial resolution." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471–76 (1982)). "Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III. ANALYSIS

### A. Vylla Title's 12(b)(1) Motion

#### 1. Diversity Jurisdiction

The Court begins by addressing an issue which is raised in passing by Vylla Title, namely whether Plaintiff has established diversity jurisdiction under 28 U.S.C. § 1332(a)(1). ECF 22-2, at 14 n.16. Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Under diversity jurisdiction, a federal district court has original jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a)(1).

Plaintiff asserts subject matter jurisdiction "pursuant to 28 U.S.C. § 1332" by stating "there is complete diversity of citizenship between the Plaintiff and each Defendant, and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs." ECF 15, at 2 ¶ 4. The allegations in the amended complaint confirm as much as no claims raise federal questions. *See id.* at 10 (state law breach of contract claim), at 11–12 (state law promissory estoppel claim), at 13–14 (state law negligent misrepresentation claim), at 14–15 (state law civil fraud claim), at 16–17 (state law unjust enrichment claim), at 17–19 (state law tortious interference with prospective economic advantage claim), at 19–20 (state law trespass claim), at 21–22 (state law malicious user

7

of process claim). It is undisputed that the parties hail from different states. *Id.* at 2 (noting that Plaintiff is a citizen of Ohio and Defendants are citizens of Maryland and Delaware). Thus, the answer to the threshold question of subject matter jurisdiction rests entirely on whether the amount in controversy exceeds the sum of $75,000. *See* 28 U.S.C. § 1332(a)(l).

In the ordinary course, the "sum claimed by the plaintiff controls" the amount in controversy determination. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). The Fourth Circuit has noted that a defendant seeking dismissal of a diversity action for lack of a sufficient amount in controversy must prove "'the legal impossibility of recovery' to be 'so certain as virtually to negate the plaintiff's good faith in asserting the claim.'" *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010) (quoting *Wiggins v. N. Am. Equitable Life Assurance Co.*, 644 F.2d 1014, 1017 (4th Cir. 1981)). Moreover, "[a] mere dispute over the mathematical accuracy of a plaintiffs damages calculation does not constitute such a showing." *Id.* (citing *McDonald v. Patton,* 240 F.2d 424, 425 (4th Cir. 1957)).

However, in *Momin v. Maggiemoo's International, LLC*, 205 F. Supp. 2d 506 (D. Md. 2002) and *ARCO Nat'l Constr., LLC v. MCM Mgmt. Corp.*, Civ. No. ELH-20-3783, 2021 WL 4148456 (D. Md. Sept. 10, 2021), Judges Blake (*Momin*) and Hollander (*ARCO Nat'l Constr.*) explained that the relevant legal standard for proving, or disproving, jurisdiction depends on the allegations in a complaint related to the amount in controversy. "In determining whether an amount in controversy is sufficient to confer jurisdiction," federal courts have applied "one of two legal standards depending on whether the damages are specified or unspecified in the complaint." *Momin*, 205 F. Supp. 2d at 509. Under this standard, "[w]here a plaintiff claims a *specific* amount in damages," one greater than the $75,000 threshold, it is the opponent to the establishment of jurisdiction who bears the burden of controverting the plaintiff's assertion to a "legal certainty."

8

*Id.* (emphasis added) (citation omitted). Thus, "[i]f the plaintiff *claims a sum* sufficient to satisfy the statutory requirement, a federal court may dismiss only if 'it is apparent, *to a legal certainty*, that the plaintiff cannot recover the amount claimed.'" *JTH Tax, Inc.*, 624 F.3d at 638 (emphasis in original) (citation omitted).

However, where "a plaintiff's complaint does not allege a specific amount in damages," a different standard applies. *Momin*, 205 F. Supp. 2d at 509. "In that situation, the proponent of jurisdiction must 'prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum.'" *ARCO Nat'l Constr.*, 2021 WL 4148456, at *11 (citing *Momin*, 205 F. Supp. 2d at 510). "In such cases, '[a] lower burden of proof is warranted because there is simply no estimate of damages to which a court may defer.'" *Momin*, 205 F. Supp. 2d at 510 (quoting *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996), *abrogated on other grounds, Cohen v. Office Depot. Inc.*, 204 F.3d 1069 (11th Cir. 2000)). As Judge Hollander noted, "[t]his is consistent with the 'well-pleaded complaint' rule, under which the facts showing the existence of subject matter jurisdiction 'must be affirmatively alleged in the complaint.'" *ARCO Nat'l Constr.*, 2021 WL 4148456, at *11 (citing *Pinkley, Inc. v. Cty. of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999)).

Plaintiff asserts only generally that his damages include "compensatory damages and punitive damages in an amount in excess of $75,000, with the exact amount to be determined at trial, plus pre-judgment interest, attorney's fees, costs and such other relief as justice may require." ECF 15, at 11–14. Plaintiff further argues that "[t]here is no requirement for a specific amount, other than to set forth jurisdiction of $75,000.00, or above."[6] ECF 29-1, at 9. Though Plaintiff is

---

[6] Technically, this assertion that claiming $75,000 is sufficient for diversity jurisdiction is incorrect. *See* 28 U.S. Code § 1332 (a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy *exceeds* the sum or value of $75,000 . . . ." (emphasis

9

correct that he need not provide a specific amount, it is also true that "[t]he fact that the plaintiff *alleged* an amount in controversy in excess of $75,000 . . . does not establish that this *is* the amount in controversy." *Elv. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748,752 (7th Cir. 2013) (emphasis in original). Thus, because Plaintiff has not alleged an amount in controversy with specificity, and jurisdiction has been challenged, it is Plaintiff's burden to establish that the amount in controversy establishes jurisdiction. *See ARCO Nat'l Constr.*, 2021 WL 4148456, at *11 (citing *Momin*, 205 F. Supp. 2d at 510).

As it relates to Vylla Title, Plaintiff alleges that his damages include "ownership of a Property that has no real world value" and "carrying costs, such as real estate taxes, utilities, and homeowner's insurance[.]" ECF 15, at 10 ¶ 50, at 12 ¶ 56. Vylla Title responds that "Plaintiff has not presented any credible explanation how his payments for real estate taxes, utilities, and homeowner's insurance, since 2021, could satisfy the Court's amount-in-controversy requirement." ECF 22-2, at 14 n.16. Vylla Title also points out in its reply brief that Plaintiff's "carrying costs" were only around "$9,580.97 . . . significantly less than the amount in controversy requirement." ECF 30, at 4. Plaintiff counters that Vylla Title failed to record the deed to the Property until "almost a year after the transaction [purchasing the Property] closed," *id.* at 8 ¶ 54, and claims that this failure "frustrat[ed] his ability to get possession [of the Property from the Boatengs] through the court," *id.* at 10 ¶ 49, and caused Plaintiff to "lose[] the use and value of the property for the period of [Plaintiff's] collateral litigation [against the Boatengs]," *id.* at 13 ¶ 62. Given that the Maryland State Department of Assessments and Taxation reflects that the purchase

---

added)). However, Plaintiff alleges damages in excess of $75,000 so this minor misstatement of the law has no impact on the Court's analysis.

price of the Property was $572,250,[7] loss of the use of the property for months on end, plus the additional costs alleged, likely would put Plaintiff over the jurisdictional limit.[8] However, Plaintiff asserts that he is "not seeking redress from Vylla Title for damages from the possessory interest that he was wrongfully denied from the Boatengs" or seeking to "unwind the sale" of the Property. ECF 29-1, at 7. Thus, without seeking damages for lost possession or the value of the property itself, it is not clear that Plaintiff's allegations against Vylla Title meet the amount in controversy requirement for federal jurisdiction. Unfortunately for Vylla Title, the inquiry does not end there.

The Supreme Court has held that "where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, [28 U.S.C.] § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction." *Exxon Mobil Corp.*, 545 U.S. at 549. And as it relates to the allegations against the Boatengs, Plaintiff *does* seek to recover for the lost "use and possession of the Property . . . until the Boatengs were evicted in May [of] 2024." ECF 15, at 16 ¶ 75. Thus, it is fair to read the amended complaint as alleging, at least as it relates to the Boatengs, the loss of the use of the property from the time of Plaintiff's purchase in September 2021 through May of 2024, a deprivation that could plausibly be valued at over $75,000, particularly when coupled with the punitive damages Plaintiff seeks. *See Steele v. Singh*, No. Civ. No. DKC-14-3020, 2015 WL 4430508, at *4 (D. Md. July 17, 2015) ("It is well

---

[7] "The court may take judicial notice of information found on SDAT's website." *White v. Lexington Ct. Apartments, LLC*, Civ. No. DKC-16-0427, 2016 WL 1558340, at *3 n.4 (D. Md. Apr. 18, 2016).

[8] Md. Dep't of Assessments & Tax'n, Real Prop. Data Search, https://sdat.dat.maryland.gov/RealProperty/Pages/default.aspx [https://perma.cc/4BVY-2TBP].

11

established that 'punitive damages may be aggregated with other damages to satisfy the amount-in-controversy requirement.'" (citations omitted)). Noting the diversity in citizenship between the parties, the rule announced in *Exxon Mobil Corp.* means that the claims against Vylla Title may be properly before the Court even if damages sought from Vylla Title fall below the jurisdictional threshold so long as the Court is authorized to exercise supplemental jurisdiction. *See* 545 U.S. at 566 ("Though the special nature and purpose of the diversity requirement mean that a single nondiverse party can contaminate every other claim in the lawsuit, the contamination does not occur with respect to jurisdictional defects that go only to the substantive importance of individual claims.").

A federal court may exercise supplemental jurisdiction over related claims if those claims "form part of the same case or controversy" as the claim over which "the district courts have original jurisdiction." 28 U.S.C. § 1367(a). Whether the claims are part of the same case or controversy is determined by whether they "'derive from a common nucleus of operative fact' and are such that '[a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 615 (4th Cir. 2001) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1966)). Supplemental jurisdiction is discretionary, and "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).

As stated above, the Court is satisfied after a limited preliminary inquiry that it has original jurisdiction over Plaintiff's claims against the Boatengs. Further, Plaintiff's claims against the Boatengs and Vylla Title "derive from a common nucleus of operative fact" since the allegations against both parties arise from the purchase of the Property and the alleged title issues related to

12

Vylla Title are intertwined with the actions of the Boatengs. *Hinson*, 239 F.3d at 615. Accordingly, the Court will exercise supplemental jurisdiction over Plaintiff's claims against Vylla Title.

### 2. Article III Standing

Though the Court has supplemental jurisdiction over Plaintiff's three claims against Vylla Title, these claims nonetheless fail for lack of standing. Whether a plaintiff has standing to sue is a threshold inquiry for any lawsuit. *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 597 (2007). "As the party seeking to invoke federal jurisdiction, Plaintiff[ ] bear[s] the burden of establishing standing." *In re Gerber Prod. Co. Heavy Metals Baby Food Litig.*, Civ. No. 121-269(MSN)(JFA), 2022 WL 10197651, at *4 (E.D. Va. Oct. 17, 2022) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish standing, a plaintiff must demonstrate that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. The plaintiff's "injury in fact" must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

As to first two claims against Vylla Title, Plaintiff alleges that Vylla Title's actions resulted in Plaintiff's "ownership of a Property that has no real world value since it was purchased without marketable title due to the fraudulent deeds casting a cloud upon it." ECF 15, at 10 ¶ 50, at 12 ¶ 56. An "injury in fact" is defined as "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). Plaintiff's alleged injury, as it relates to Vylla Title, is far

too speculative and conjectural to pass constitutional muster. Plaintiff makes no allegation that he attempted to sell the property after acquiring it, or even intended to do so. Indeed, Plaintiff confirms that he is "not seeking to unwind the sale, as such remedy would be wholly impractical." ECF 29-1, at 7. At best, Plaintiff alleges a potential future injury because "the cloud on the title will frustrate any sale once disclosed." *Id.* at 3; ECF 15, at 5 ¶ 24. But "'allegations of possible future injury' are insufficient" to establish an injury in fact. *Buscemi v. Bell*, 964 F.3d, 252, 259 (4th Cir. 2020) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). As to allegations that "carrying costs such as real estate taxes, utilities, and homeowner's insurance" constitute an injury in fact, ECF 15, at 12 ¶ 56, Plaintiff makes no allegation that he would not have purchased the Property and thus would have accrued these costs nonetheless. Indeed, Plaintiff arguably concedes in his amended complaint that knew about at least one fraudulent deed and bought the Property anyway. *Id.* at 5 ¶ 24. Plaintiff thus fails to allege a cognizable injury in fact for his claims alleging breach of contract and promissory estoppel.

As it relates to his negligent misrepresentation claim, Plaintiff alleges that Vylla Title's failure to properly advise him "required [Plaintiff] to enter into separate collateral litigations against the Boatengs to obtain possession of the Property and to [q]uiet the Boatengs' multiple fraudulent deeds." *Id.* at 13 ¶ 62. Plaintiff further alleges that this "led to [him] losing the use and value of the property for the period of this collateral litigation." *Id.* These claims similarly fail to allege concrete damage. Putting aside Plaintiff's acknowledgement in the amended complaint that at the time of the purchase of the property he *did* know of at least one fraudulent deed, *id.*, at 5 ¶ 24, and also knew the Boatengs occupied the Property at the time he purchased it, *id.* at 8 ¶ 35, Plaintiff's failure to contend that he would not have bought the Property if he had been reminded of the existence of the fraudulent deeds is fatal to any allegation of injury. In short, Plaintiff's

14

amended complaint concedes that he would have been forced to litigate against the Boatengs regardless of any action, or inaction, on the part of Vylla Title. Moreover, Plaintiff does not allege that the Boatengs' filing of a third fraudulent deed while Vylla Title held Plaintiff's deed in escrow caused Plaintiff to pursue litigation against the Boatengs that he otherwise would not have pursued. Plaintiff fails to allege an injury in fact resulting from Vylla Title's alleged negligent misrepresentation.

Even if Plaintiff's allegations of injury were somehow "concrete and particularized," his claims against Vylla Title still fail as the alleged injuries are not "fairly traceable to the challenged conduct" of Vylla Title. *Spokeo*, 578 U.S. at 338. Plaintiff alleges that Vylla Title "incorrectly advis[ed] that the only issue that needed to be resolved was clearing code violations that would not be available to see until after closing" and "fail[ed] to record the executed deed conveying title to Plaintiff [] in a timely manner." ECF 15, at 10 ¶¶ 48–49. However, Plaintiff concedes that he was aware that title to the Property was already clouded when he purchased the Property and the Boatengs had already filed two fraudulent deeds in 2020, well before Vylla Title assumed the role as escrow agent on Plaintiff's behalf. *Id.* at 4 ¶ 18, at 5 ¶ 20. Plaintiff's allegation that Vylla Title's delay in recording the deed "allowed the Boatengs to further confuse or otherwise cloud legal title to the Property by filing the [third fraudulent deed]" fares no better. *Id.* at 10 ¶ 49. Plaintiff fails to establish how three fraudulent deeds, versus the two that previously existed, caused him additional injury. Further, Plaintiff alleges that he discovered the third fraudulent deed in August of 2022, approximately the same time he realized that Vylla Title still held his authentic deed in escrow. *Id.* at 8 ¶ 37. He makes no claim that the delay in recording the deed was of any consequence beyond the conclusory allegation that it "allowed the Boatengs to further confuse or otherwise cloud legal title to the Property by filing the April 25, 2022, deed purporting to convey

15

their non-existent interest in the Property from Hope Living, LLC, to Kofi Boateng, Comfort Boateng, and Kamal Mustafa in fee simple." *Id.* at 10 ¶ 49. However, he then alleges that his deed *was* recorded the same month he discovered it was previously held in escrow, *id.* at 8 ¶ 39, and fails to allege that the short delay between the two events was of any consequence.[9]

Because Plaintiff has failed to plead facts sufficient to establish at least two of the three elements of Article III standing, the claims against Vylla Title must be dismissed. *See McInnes v. Lord Baltimore Emp. Ret. Income Acct. Plan*, 823 F. Supp. 2d 360, 363 (D. Md. 2011).[10]

### B. The Boatengs' Motion to Dismiss

As noted, the Boatengs have styled their motion to dismiss as pursuant to "Fed. R. Civ. P.12(b)(1) and 12(b)(6)." ECF 24, at 1. The factual and legal basis for the Boatengs' motion is difficult to decipher. It appears to allege that the sale of the Property to Plaintiff was unlawful because "[t]he HIS Trust [*sic*] was assigned a dead loan" and makes additional claims against Nationstar Mortgage, LLC, an entity that is not a party to this case. *See* ECF 24, at 4–5. The Court is mindful of its obligation to liberally construe pleadings made by pro se litigants. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the Boatengs' barely decipherable arguments appear to either raise factual disputes that cannot be addressed at the motion to dismiss stage, *see Baird*

---

[9] Plaintiff does allege that "he reasonably believed that he had no standing to file Wrongful Detainer to obtain possession, because [the] deed was still not on record." ECF 15, at 8 ¶ 38. However, he obviously does not claim that he intended to file such a suit at any point between acquiring the Property in September of 2021 and learning, in August of 2022, that his deed was not recorded since he apparently made no inquiry into the title until August of 2022. Further, he does not allege that he *intended* to file a lawsuit during the apparently brief period between the discovery of Vylla Title's alleged failure to record the deed and its actual recording of the deed that very same month. At best, he takes issue with a day in a delayed update to "state tax records" that failed to reflect his ownership of the property until March 23, 2023. *Id.* at 9 ¶ 40. However, he makes no claim that this delay is Vylla Title's fault, and it is unclear to the Court how the alleged failure of "state tax records" to reflect his ownership interest in the Property until March of 2023 delayed the filing of Plaintiff's wrongful detainer suit until March 23, 2023. *Id.*

[10] Accordingly, the Court need not analyze the merits of Vylla Title's Rule 12(b)(6) arguments.

*ex rel. Baird v. Rose*, 192 F.3d 462, 468 n.6 (4th Cir. 1999) ("And, it is inappropriate in addressing the appropriateness of a dismissal under Rule 12(b)(6) to make a determination concerning the weight of the evidence that ultimately may be presented in support of these various positions."), or make generalized allegations of an entity—Nationstar Mortgage, LLC—that is not a party to this case. Accordingly, the Boatengs' motion will be denied.

### III. CONCLUSION

For the foregoing reasons, Defendant Vylla Title's motion to dismiss is **GRANTED**; and Defendants Comfort Boateng and Kofi Boateng's motion to dismiss is **DENIED**.

A separate implementing Order will issue.

Dated: September 26, 2025                              /s/
                                                      Brendan A. Hurson
                                                      United States District Judge